UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY A. SWOPE, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE NORTUMBERLAND NATIONAL | : | |
| BANK and J. TODD TROXELL, | : | CASE 4:13-CV-02257-MWB-MCC |
| Individually and in his official capacity as | : | |
| Senior Vice President of Lending and | : | |
| Loan Administration for | : | |
| The Northumberland National Bank, and | : | |
| JOHN DOES 1-10, | : | |
|     Defendants | : | JURY TRIAL DEMANDED |

## DEFENDANT NORTHUMBERLAND NATIONAL BANK AND J. TODD TROXELL'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Defendants Northumberland National Bank and J. Todd Troxell, by and through their counsel, Marshall, Dennehey, Warner, Coleman & Goggin and Donald L. Carmelite, Esquire, file this Brief in Support of their Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(B)(6) and assert the following:

## I.    PROCEDURAL HISTORY:

Plaintiff Rodney A. Swope initiated this matter by way of Complaint on August 29, 2013 (Doc. 1).  The Court issued a summons on October 29, 2013 directed to Defendants Joe Does 1-10, and Moving Defendants Northumberland National Bank and J. Todd Troxell (Doc. 2).  On September 16, 2013, Plaintiff perfected service of his Complaint on Moving Defendants Northumberland National Bank and J. Todd Troxell (Docs. 4 and 5).  Defendants Northumberland National Bank and J. Todd Troxell (hereinafter "Moving Defendants") filed a Motion to Dismiss on October 7, 2013 (Doc. 3), and Brief in Support of their Motion to Dismiss (Doc. 8).

On October 31, 2013, Plaintiff filed a Motion for Extension of Time to file a response to Defendant's Motion to Dismiss (Doc. 9), which the Court granted on November 1, 2013 (Doc. 10).  On November 15, 2013, Plaintiff filed his First Amended Complaint (Doc. 11).  On November 21, 2013, the Court issued an Order directing Defendants to respond to Plaintiff's First Amended Complaint by December 13, 2013 (Doc. 12).

Plaintiff's original Complaint asserted civil rights and tort claims against Moving Defendants.  The First Amended Complaint adds a statutory claim arising under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq. (2013).   Count I of the First Amended Complaint alleges a Section 1983 civil rights claim for violation of Plaintiff's Fourteenth Amendment procedural and substantive due process rights.  Count II sounds in negligence.  At Count III, Plaintiff pleads an abuse of process matter.  In Count IV, Plaintiff asserts a Monell liability claim.  Finally, at Count V, Plaintiff pleads a claim for violation of the Unfair Trade Practices Consumer Protection Law.

Aside from the Unfair Trade Practices Consumer Protection Law claim, Plaintiff's First Amended Complaint pled three new paragraphs, none of which change the factual background of the case (Doc. 11, paragraphs 8, 11-12).

Plaintiff seeks compensatory and punitive damages, attorney's fees, costs and interest, along with injunctive relief requiring monitoring and training (Doc. 1).

## II.    STATEMENT OF FACTS:

Allegations contained in Plaintiff's First Amended Complaint and the public record, viewed in a light most favorable to the Plaintiff for the purposes of this

Motion only, provide as follows:[1] Plaintiff maintains that Moving Defendants, through their representatives, John Does 1-10 or J. Todd Troxell, refused to accept a judgment of foreclosure payoff from Plaintiff, via the third party private sale, and instead unilaterally increased the judgment amount, with notice and opportunity to be reviewed by a Court (Doc. 11).

In reality, this matter arises from Northumberland National Bank's civil action in mortgage foreclosure taken against Plaintiff on November 3, 2008 in the Court of Common Pleas of Snyder County.  See action in mortgage foreclosure Complaint attached as Exhibit "A" to Moving Defendants' Motion to Dismiss. (Doc. 2).  Northumberland National Bank held a mortgage on Plaintiff's property located at 5959 Route 52, Middleburg, Pennsylvania 17842.  Id.  As of November 3, 2008, Plaintiff was in default, having not made payments since July of 2008.  Id. The Snyder County Sheriff properly served Plaintiff with the Complaint.  See Snyder County's Sheriff's Return attached to Moving Defendants' Motion to Dismiss as Exhibit "B".  (Doc. 2).  Plaintiff failed to timely respond to the Complaint and, as such, Defendant Northumberland National Bank provided

---

[1] Moving Defendants specifically deny that the factual recitation in Plaintiff's Complaint accurately represents the factual history of events giving rise to this litigation and specifically challenge Plaintiff's recitation of facts and defend their interests from all claims asserted by Plaintiff.

Plaintiff with Notice of Intent to take a default.  See Important Notice with Certificate of Mailing attached as Exhibit "C" to Moving Defendants' Motion to Dismiss.  (Doc. 2).  When Plaintiff failed to respond to the Important Notice, on December 23, 2008, Defendant Northumberland National Bank filed a Praecipe for Entry of Default Judgment.  See Praecipe for Entry of Default Judgment attached to Moving Defendants' Motion to Dismiss as Exhibit "D". (Doc. 2).  On December 23, 2008, the Snyder County Prothonotary entered judgment against Plaintiff in the amount of $107,550.71, **plus interest and costs from the date of judgment**.  Id. On January 9, 2009, Defendant Northumberland National Bank filed a Praecipe for Writ of Execution in the amount of $109,902.61.  See Praecipe for Writ of Execution attached to Moving Defendants' Motion to Dismiss as Exhibit "E". (Doc. 2).  The Snyder County Sheriff's Office timely served the Writ of Execution on Plaintiff.  See Snyder County Sheriff's Return attached to Moving Defendants' Motion to Dismiss as Exhibit "F".  (Doc. 2).  On January 29, 2009, Defendant Northumberland National Bank provided Plaintiff Notice that the Snyder County Sheriff intended to conduct a Sheriff's Sale to sell the property on Friday, April 17, 2009 at 1:30 PM.  See Affidavit of Service attached to Moving Defendants' Motion

to Dismiss as Exhibit "G".  (Doc. 2). The April 17, 2009 Sheriff's Sale was continued until July 24, 2009.

Prior to the scheduled July 2009 Sheriff's Sale, Plaintiff filed the first of his three post-default judgment Chapter 13 bankruptcies on July 17, 2009.  See docket entries for case number 1:09-BK-05484-MDF attached to Moving Defendants' Motion to Dismiss as Exhibit "H".  (Doc. 2).  Plaintiff filed his subsequent second and third bankruptcies, post default judgment, on July 15, 2010 and July 11, 2012, respectively.  See bankruptcy docket entries 1:10-BK-05761-MDF and 1:12-BK-04075-MDF attached to Moving Defendants' Motion to Dismiss as Exhibits "I" and "J", respectively. (Doc. 2).  None of Plaintiff's three bankruptcies were discharged.  Rather, all were dismissed or withdrawn.  Through the pendency of each bankruptcy, Plaintiff sought an automatic stay of the foreclosure process.  See docket entries attached to Moving Defendants' Motion to Dismiss as Exhibits "H", "I" and "J". (Doc. 2).

Following the dismissal and withdrawal of Plaintiff's third bankruptcy proceeding, on July 21, 2012, Defendant Northumberland National Bank filed a Praecipe for Writ of Execution in the Court of Common Pleas of Snyder County in the amount of $115,869.57.  See Praecipe for Reissuance of Writ of Execution

attached to Moving Defendants' Motion to Dismiss as Exhibit "K".  (Doc. 2).  On

December 21, 2012, Defendant Northumberland National Bank filed an Affidavit

of Service of the reissued Writ of Execution indicating that service was provided to

Plaintiff, among others.  See Affidavit pursuant to Rule 3129.1 attached to Moving

Defendants' Motion to Dismiss as Exhibit "L".  (Doc. 2).  On December 21, 2012,

the Snyder County Prothonotary's Office reissued a Writ of Execution in the

amount of $115,869.57.  See reissued Writ of Execution attached to Moving

Defendants' Motion to Dismiss as Exhibit "M".  (Doc. 2). On February 14, 2009,

Defendant Northumberland National Bank filed an Affidavit of Service providing

Notice to Plaintiff, among others, of the intended Sheriff's Sale to occur on March

22, 2013.  See Affidavit of Service attached to Moving Defendant's Motion to

Dismiss as Exhibit "N".  (Doc. 2).  On February 15, 2013, the Snyder County

Sheriff's Office filed a Snyder County Sheriff's Return certifying service of the

reissued Writ of Execution on Plaintiff.  See Snyder County Sheriff's Return

attached to Moving Defendants' Motion to Dismiss as Exhibit "O".  (Doc. 2).  On

April 4, 2013, Defendant Northumberland National Bank filed an Affidavit of

Non-Military Service indicating that Plaintiff was not a member of the United

States military.  See Affidavit of Non-Military Service attached to Moving

Defendants' Motion to Dismiss as Exhibit "P".  (Doc. 2).  On April 20, 2013, the

Snyder County Sheriff filed a Snyder County Sheriff's Return certifying that the

Sheriff's Sale was properly executed on March 22, 2013, and that the property sold

for $27,000.00.  See Snyder County Sheriff's Return attached to Moving

Defendants' Motion to Dismiss as Exhibit "Q".  (Doc. 2).

Plaintiff maintains that at some point after the December 23, 2008 entry of a

default judgment in the amount of $107,552.71 (plus interest and costs from date

of judgment), but before the March 22, 2013 Sheriff's Sale, a third party private

buyer by the name of Ross Stevens attempted to purchase the property for

approximately $130,000.00, but that J. Todd Troxell demanded a payoff of

$175,000.00.

As a result, Plaintiff maintains that Moving Defendants, while acting under

the color of state law, violated his due process rights under the United States

Constitution's Fourth and Fourteenth Amendments.   Additionally, Plaintiff

maintains that Moving Defendants' actions were negligent, were an abuse of

process and that Defendants developed and maintained policies, practices,

procedures and customs amounting to the deliberate indifference to the

Constitutional rights of Plaintiff sounding in a Monell claim.

### III.    QUESTIONS PRESENTED:

**A.    WHETHER PLAINTIFF'S CLAIM AGAINST NORTHUMBERLAND NATIONAL BANK AND J. TODD TROXELL FOR VIOLATION OF HIS PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS MUST BE DISMISSED AS A MATTER OF LAW.**

*Suggested answer in the affirmative.*

**B.    WHETHER PLAINTIFF'S CLAIM FOR MONELL VIOLATIONS MUST BE DISMISSED AS A MATTER OF LAW.**

*Suggested answer in the affirmative.*

**C.    WHETHER PLAINTIFF'S CLAIM FOR NEGLIGENCE MUST BE DISMISSED AS A MATTER OF LAW.**

*Suggested answer in the affirmative.*

**D.    WHETHER PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS MUST BE DISMISSED AS A MATTER OF LAW.**

*Suggested answer in the affirmative.*

**E.    WHETHER PLAINTIFF'S CLAIM FOR UNFAIR TRADE PRACTICES MUST BE DISMISSED AS A MATTER OF LAW.**

*Suggested answer in the affirmative.*

## IV.   LEGAL STANDARD:

**Motion to Dismiss.**   When considering a Motion to Dismiss under Fed R.

Civ. P. 12(b)(6), the Court must accept as true, well pled allegations in Plaintiff's

Amended Complaint and construe them in a light most favorable to the Plaintiff.

The court may dismiss the claim if it appears beyond a reasonable doubt, that

Plaintiff cannot prove those set of facts in support of a claim which would entitle

him to relief.  Labove v. Lalley, 809 F.2d. 220 (3d Cir. 1987).  The court may

consider Exhibits attached to the Complaint, and matters of public record.  Benefit

Guarantee Corp. v. White Consol Industries, 998 F. 2d. 1192, 1196 (3d. Cir. 1993).

The Supreme Court clarified its position on the standard under a Motion to

Dismiss, in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The

"no set of facts standard" found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),

has been abrogated in favor of requiring a Plaintiff to plead "enough facts to state a

claim to relief that is plausible on its face." Twombly, 127 S. Ct. 1974.  As a result

of the Twombly holding, Plaintiffs must have "nudged [their] claim across the line

from conceivable to plausible, or the Complaint must be dismissed."  (Id.).

> While a Complaint attacked by a Rule 12(b)(6) Motion to
> Dismiss does not need detailed factual allegations, Plaintiff's
> obligation [under Rule 8(a)(2)] to provide the 'grounds' of his

> 'entitlement to relief' requires more than labels and conclusions, and the formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

(Id. at 1964-65) (citations omitted).

Pursuant to Santiago v. Warminster Twp., the Third Circuit clarified the pleading requirement standard through its interpretation of Supreme Court decisions in Ascroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and Bell Atlantic Corp. Twombley, 127 S. Ct. 1955, 1974 (2007). Specifically, the Court held that the determination of the sufficiency of a Complaint requires a three step process:

> "First, the Court must take note of the elements a Plaintiff must plead to state a claim. Second, the Court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pled factual allegations, a Court should assume their veracity and then determine whether they plausibly give rise to entitlement for relief."

Santiago v. Warminster Twp., 2010 U.S. App. LEXIS 25414, *13 (3d Cir. December 14, 2010) (citations omitted).

## V.   LEGAL ARGUMENT:

### A.   PLAINTIFF FAILS TO STATE A CLAIM IN VIOLATION OF HIS DUE PROCESS RIGHTS.

11

The heart of Plaintiff's claim is that Moving Defendants, at an unspecified time and after obtaining a valid default judgment in foreclosure against his property in the amount of $107,552.71, failed to accept an alleged third party private purchaser, Ross Stevens', attempt to purchase the foreclosed property for approximately $130,000.00.  Rather, Plaintiff maintains that Moving Defendants demanded a payoff of at least $175,000.00.  According to Plaintiff, this led to a violation of his substantive and procedural due process rights.

### 1.    Substantive Due Process

To establish a claim for a violation of substantive due process, Plaintiff must establish that his protected property interest was deprived by conduct that was so arbitrary or egregious as it "shocked the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846-847.  Only the most egregious official conduct will be found to shock the conscience. United Artist Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F. 3d. 392, 399 (3d. Cir. 2003), "[T]he standard stringency reflects maintenance of the proper proportions of Constitutional, as opposed to ordinary tort violations." Blaine v. Township of Radnor, 167 Fed. App'x. 330, 333 (3d Cir. 2006).  Whether an executive action is conscience shocking depends on the context in which it takes place. Schieber v. City of Philadelphia, 320 F.3d 409,

417 (3d Cir. 2003).  The Third Circuit has explained that a plaintiff may establish

conscience shocking behavior through:  (1) deliberate indifference; (2) gross

negligence or arbitrariness that indeed shocks the conscience; or (3) an attempt to

harm.  Phillips v. County of Allegheny, 515 F.3d 224, 241 (3d  Cir. 2008).

Because this is a case where Moving Defendants arguably were not under a time

constraint to act, the deliberate indifference standard applies.  The Third Circuit's

application of the "deliberate indifference test" borrows on the definition of

deliberate indifference employed in an Eighth Amendment claim.  Under those

cases, "the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the

inference." Nicini v. Morra, 212 Fed. 3d 798, 811 (3d Cir. 2011), quoting Farmer

v. Brennan, 511 U.S. 825, 837 (1994).  At issue, however, is whether a subjective

or objective standard of liability should apply.  Regardless of whether a subjective

or objective approach is utilized, given the unmistakable facts of the underlying

foreclosure action, it is clear that Plaintiff's substantive due process rights were

never violated.

First, Plaintiff cannot maintain an action against Northumberland National

Bank other than a Monell liability claim.  Keisling v. Penn, 2010 U.S. Dist. LEXIS

108523, *15 (M.D. PA. Oct. 12, 2010) (Section 1983 actions may only be brought against individuals).

Second, notably, Plaintiff does not challenge the underlying foreclosure action filed in the Court of Common Pleas of Snyder County likely because the Rooker-Feldman Doctrine would preclude such a challenge.  As outlined in Exhibits "A" through "Q" of Moving Defendants' Motion to Dismiss (Doc. 2), J. Todd Troxell did not act with any deliberate indifference toward Plaintiff. Defendant Northumberland National Bank properly obtained a default judgment on December 23, 2008 in the amount of $107,552.71 plus costs and interest per day from the date of judgment.  See Exhibit "D". (Doc. 2).  After Plaintiff's attempts to stall the Sheriff's Sale through the bankruptcy proceedings failed, Northumberland National Bank properly filed a Praecipe for Reissuance of Writ of Execution on the original judgment in the amount of $115,869.57 plus costs and interest per day from the date of judgment. See Exhibit "K".  (Doc. 2).  After following the proper notice procedures, the Sheriff conducted a Sheriff's Sale on March 22, 2013, resulting in the sale of Plaintiff's property in the amount of $27,000.00.  See Exhibit "Q".  (Doc. 2).

Accordingly, the underlying state foreclosure action establishes that on December 21, 2012, Northumberland National Bank sought $115,869.57 plus interest and costs from the date of judgment (not $175,000.00), yet was only able to sell the property for $27,000.00, thus incurring a substantial loss.  It stretches the imagination that Moving Defendants would incur such a substantial loss when a viable option to purchase the property for $130,000.00 existed.  Plaintiff fails to attach to his First Amended Complaint a copy of an Agreement of Sale documenting the alleged $130,000.00 private sale.  Pennsylvania law requires that all sale transactions of land to be memorialized by contract in order to satisfy the Statute of Frauds. 33 P.S. §1.

Nonetheless, even if Plaintiff had a viable buyer for his property, said buyer could have purchased the property at the Sheriff's Sale at a greatly reduced rate.

Even if we ignore the Statute of Frauds problem and assume that Plaintiff had a viable third party purchaser, Plaintiff's substantive due process claim fails the Third Circuit's deliberate indifference test. Allegations contained in Plaintiff's Complaint and the public record, viewed in a light most favorable to the Plaintiff, fail to demonstrate that J. Todd Troxell was (1) aware of facts from which an inference could be drawn that a substantial risk of harm existed to the Plaintiff and

that; (2) the specific inference was actually made.  <u>Nicini</u>, 212 Fed. 3d. 798, 811

(3d Cir. 2011).  Such facts do not exist for an inference to be drawn.  Rather, the

opposite is true.  As pled by Plaintiff, and established through the public

documents, J. Todd Troxell was aware that a Sheriff's Sale was going to proceed

on March 22, 2013 for $115,869.59 and that Plaintiff had a potential purchaser for

the property at $130,000.00.  Thus, Plaintiff's Complaint fails to establish that J.

Todd Troxell was aware of the facts from which an inference could be drawn that a

potential risk of harm existed to the Plaintiff.  Furthermore, Northumberland

National Bank is the only party actually harmed by the alleged decision to forego

Plaintiff's third party purchaser in that they properly only yielded $27,000.00 at the

Sheriff's Sale, roughly $103,000.00 less than Plaintiff's prospective purchaser.

Accordingly, Plaintiff's substantive due process claim found at Count I of his

Complaint must be dismissed with prejudice.

### 2.    Procedural Due Process

A state may not authorize deprivation of a protected liberty or
property interest without providing a procedural mechanism in
connection with that deprivation that satisfies the requirements of due
process.  U.S. Const. amend. XIV.  In order to establish that the state
has violated an individual's right to procedural due process, a plaintiff
must first demonstrate the existence of protected interests in life,
liberty or property that has been interfered with by the state; and then

16

second, establish that the procedures attendant upon that deprivation
were Constitutionally insufficient.

Musila v. Lockhaven University, 2013 U.S. Dist. LEXIS 128437, *14-*15 (M.D.

Pa. September 9, 2013) (citing Board of Regents of State Colleges v. Roth, 408

U.S. 564, 571 (1972); Goldberg v. Kelly, 397 U.S. 254 (1970); Hewitt v. Helms,

459 U.S. 460 (1983).

In the face of the First Amended Complaint, it is not clear what property

interests J. Todd Troxell[2] allegedly deprived Plaintiff; is it his home, personal

reputation, finances or other; regardless, the record in the underlying foreclosure

action in the Snyder County Court of Common Pleas establishes that Plaintiff got

all of the procedure he was due.

Plaintiff contends that Moving Defendants unilaterally increased the amount

of the judgment to $175,000.00 without due process of law.  However, the

uncontradicted underlying foreclosure action reveals the true facts.  Defendant

Northumberland National Bank filed a civil action in mortgage foreclosure on

November 3, 2008, which the Snyder County Sheriff's Office properly served

Plaintiff.  See Exhibits "A" and "B".  (Doc. 2).  Plaintiff did not respond to the

---

[2] Plaintiff cannot maintain a Section 1983 claim against Northumberland National Bank.  Keisling, 2010 U.S. Dist.
LEXIS 1083523 *15 (M.D. Pa. Oct. 12, 2010).

Complaint and, as such, a default judgment was entered in the amount of $107,552.71 plus interest and costs from the date of judgment.  See Exhibits "C" and "D".  (Doc. 2).  In an attempt to delay the Sheriff's Sale on the property, Plaintiff filed three Chapter 13 bankruptcies between July 17, 2009 and July 11, 2012.  See Exhibits "H", "I" and "J".  (Doc. 2).  Following the dismissal and withdrawal of the third bankruptcy, Northumberland National Bank properly filed a Praecipe for Reissue of Writ of Execution in the amount of $115,869.57 (not $175,000.00), which was served upon Plaintiff.  See Exhibits "A" and "L".  (Doc. 2).  The Snyder County Prothonotary's Office reissued the Writ of Execution in the amount of $115,869.57, which was served upon Plaintiff.  See Exhibits "M" and "O".  (Doc. 2).  On February 15, 2013, the Snyder County Sheriff's Office filed the Snyder County Sheriff's Return certifying that Plaintiff received notice of the intended March 22, 2013 Sheriff's Sale.  See Exhibit "O" attached to Moving Defendants' Motion to Dismiss.  On March 22, 2013, the Sheriff's Sale proceeded and the property was sold for only $27,000.00.  See Exhibit "Q".  (Doc. 2).  Accordingly, Plaintiff received all of the notice and opportunity to be heard that he was due.

Plaintiff's allegation that J. Todd Troxell denied him the opportunity to sell the property for $130,000.00 is fiction unsupported by any documentary evidence. Pennsylvania requires that the sale of property be memorialized by a writing, satisfying the Statute of Frauds.  33 P.S. §1.  Plaintiff has not produced any said writing or even alleged that one existed. Moreover, the bald allegation makes little sense in the context of the actual Sheriff's Sale that occurred on March 22, 2013.  If Plaintiff actually had a buyer willing to purchase the property for $130,000.00, logic suggests that said buyer could have purchased the property for substantially less given that the property sold for only $27,000.00.  With the uncontroverted knowledge that Plaintiff received notice of each and every action involved in the foreclosure process, he cannot be said to have lacked an opportunity to participate in the Sheriff's Sale.

Accordingly, Plaintiff's claim for violation of procedural due process rights found at Count I must be dismissed with prejudice.

### B.    THE PLAINTIFF'S MONELL CLAIM MUST BE DISMISSED AS A MATTER OF LAW.

A municipality may be held liable under §1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose

acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Social Serv., 436 U.S. 658, 690, 694 (1978).  "Thus, a Plaintiff seeking to impose liability on a municipality under §1983 must identify a municipal 'policy' or 'custom' that caused the Plaintiff's injury."  (M.C. v. Pavlovich, 2008 U.S. Dist. LEXIS 568829*11) (M.D. Pa. 2008) (Jones, J.) (citing Bd. of County Comm.'rs of Brian County v. Brown, 520 U.S. 397 (1997).   Policies are a "statement, ordinance, regulation, or decision, emanating from the municipality's duly constituted legislative body for those officials whose acts may fairly be said to those of the municipality."  As compared to a custom, which is a "practice that has not been formally approved by an appropriate municipal decision maker, but which is so widespread, permanent and well-settled as to have the force of law."  Id. (citing Bd. of County Comm'rs of Brian County at 403-04; Monell, 436 U.S. at 690-691.  To establish liability, Plaintiff must demonstrate a causal link between the alleged custom or policy and the alleged §1983 violation and concomitant harm.  In short, "a municipality can be liable under §1983 only where its policies are the 'moving force behind the violation.'"  City of Canton v. Harris, 489 U.S. 379, 386 (1989) (quoting Monell, 436 U.S. at 694).

When a failure to train, discipline or supervise claim is made, §1983 municipal liability will only attach if the Plaintiff can show "both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. DeSimone, 159 F.3d 120, 127 (3d Cir., 1998); Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir., 1997); Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir., 1988). More specifically, a plaintiff "must show that a 'reasonable municipal policy maker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question.'" Cacciatore v. City of Philadelphia, 2005 U.S. Dist. Lexis 19064, *1, *6 (E.D. Pa., Sept. 1, 2005) (quoting, Garcia v. County of Bucks, 155 F. Supp. 2nd 259, 268 (E.D. Pa., 2001)); Strauss v. Walsh, 2002 U.S. Dist. Lexis 24717, *1, *10 (E.D. Pa. Dec. 18, 2002); Altieri v. Pennsylvania State Police, 2000 U.S. Dist. Lexis 5041, *1, *39-40 (E.D. Pa., April 20, 2000).

> Although Monell applied to municipal governments and not private entities acting under color of state law, the Third Circuit has extended the Monell Doctrine to private Section 1983 defendants. . .

21

> thus for a private employer defendant to be liable under Section 1983,
> the plaintiff must establish an employer policy or custom and that the
> policy caused the Constitutional violation alleged.

Wallace v. Powell, 2012 U.S. Dist. LEXIS 91886, *68 (M.D. Pa. July 3, 2012)

(citing Natale v. Camden Cnty. Corr. Facility, 318 F. 3d 575, 583 (3d Cir. 2003);

Bd. of Cnty Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

To the extent Plaintiff alleges that the actions of J. Todd Troxell and John

Does 1-10 amount to Monell liability pursuant to a theory of "vicarious liability,"

this is precisely the theory against which the Supreme Court has consistently

warned:

> We have consistently refused to hold municipalities liable under a
> theory of respondeat superior. See Oklahoma City v. Tuttle, 471 U.S.
> 808, 818, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985) (plurality opinion);
> id., at 828 (opinion of Brennan, J.); Pembaur, 475 U.S. at 478-479; St.
> Louis v. Praprotnik, 485 U.S. 112, 122, 99 L. Ed. 2d 107, 108 S. Ct.
> 915 (1988) (plurality opinion); id., at 137 (opinion of Brennan, J.);
> Canton v. Harris, 489 U.S. 378, 392, 103 L. Ed. 2d 412, 109 S. Ct.
> 1197 (1989).

Bd. of the County Comm's v. Brown, 520 U.S. 397  (1997).

Claims of constitutional violations cannot be based on respondeat superior,

and require some level of personal involvement by an alleged offender.  To

establish personal liability in a §1983 action, Plaintiff must demonstrate that a

government official, acting under color of state law, caused the deprivation of a federally protected right.  Hafer v. Melo, 502 U.S. 21, 25 (1991).

Plaintiff's Complaint is completely void of any factual allegations supporting a Monell claim.

The United States Supreme Court has explained that "Plaintiff's obligation [under Rule 8(a)(2)] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions in the formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise the right to relief above the speculative level." Twombly, 127 S. Ct. at 1964-1965 (citations omitted).   The Third Circuit has refined the pleading  requirement and directs this Court to engage in a three step process:

1.    The Court must take note of the elements of a valid Monell claim;

2.    The Court must identify those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and

3.    Where there may be well-pled factual allegations, the Court must assume their veracity and then determine whether they plausibly give rise to the entitlement for relief.

<u>Santiago v. Warminster Township</u>, 2010 U.S. App. LEXIS 25414, *13 (3d Cir. December 14, 2010) (citations omitted).

Plaintiff's Complaint points to no specific Northumberland National Bank policy directing its employees to violate Plaintiff's Constitutional rights in the manner alleged in his Complaint.  Furthermore, the Complaint lacks any specific facts demonstrating a custom or practice that is not formally approved, but so widespread, permanent and well settled to have the force of a policy, which resulted in the alleged Constitutional violations.  Rather, Plaintiff relies upon bare bones formulated pleadings found at Count IV of his Complaint.  Accordingly, for the foregoing reasons, Count IV of Plaintiff's Complaint asserting a Monell liability claim against the Moving Defendants must be dismissed with prejudice.

### C.   PLAINTIFF'S NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW.

Pennsylvania law places the burden on the plaintiff to establish the existence of negligence on the part of the defendant by proving four elements:

(1)   a duty or obligation recognized by law;

(2)   a breach of that duty;

(3)   a casual connection between the conduct and the resulting injury; and

(4)      actual damages.

Estate of Swift v. Northeastern Hosp., 690 A.2d 719 (Pa. Super. 1997).

Plaintiff maintains that "Defendant's refusing to accept a judgment foreclosure pay-off" constituted negligence. (Doc. 1).  Plaintiff's Complaint names 12 Defendants, Northumberland National Bank, J. Todd Troxell and ten separate John Does. Paragraph 25 of Plaintiff's Complaint referencing "Defendant's" lacks specificity such that Moving Defendants can ascertain what claim applies to them. Assuming for argument sake that Plaintiff intended the negligence Count to apply to Moving Defendants, the negligence claim lacks proper pleading required by Rule 8 and the Supreme Court.  As noted above, the United States Supreme Court has explained that "Plaintiff's obligation [under Rule 8(a)(2)] provide the grounds of his entitlement to relief requires more than labels and conclusions in the formulatic recitation of the elements of a cause of action will not due.  Factual allegations must be enough to raise the right to relief above the speculative level." Twombly, 127 S. Ct. at 1964-1965 (citations omitted).

Plaintiff has failed to identify the duty that Moving Defendants breached when it allegedly failed to accept a judgment foreclosure payoff.  Rather, for the

reasons set forth in Sections A and B above, Moving Defendants acted consistent with the law in providing Plaintiff with due process when foreclosing and executing upon his property.  As such, Plaintiff's negligence claim fails as a matter of law and Count II of Plaintiff's Complaint must be dismissed with prejudice.

**D.     PLAINTIFF'S ABUSE OF PROCESS CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED.**

"Abuse of civil process is concerned with the perversion of a process after it is issued." Rosen v. Teroso Petroleum Corp., 399 PA Super 226, 236, 582 A.2d 27, 32 (1990) (alloc. denied, 527 Pa. 636, 592 A.2d 1303 (1991)).  In order to maintain a cause of action for abuse of civil process, a plaintiff must plead and prove that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) that the plaintiff suffered harm as a result. Hart v. O'Malley, 436 Pa. Super. 151, 168, 647 A.2d 542, 551 (1994).  Moreover, a claim for abuse of process requires "some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process…; there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Hart v. O'Malley, 436 Pa. Super. 151, 170, 647 A.2d

542, 552 (1994) (quoting <u>DiSante v. Russ Financial Co.</u>, 251 Pa. Super. 184, 189, 380 A.2d 439, 441 (1977)).  If a plaintiff alleges only the existence of a collateral bad intention and cannot establish a definitive act or threat in furtherance thereof, he cannot sustain his *prima facie* burden.  <u>Id</u>.

Thus, a plaintiff pursuing a common law abuse of process claim must establish that the legal process was used for some unlawful purpose for which the process was not designed.  <u>Dietrich Industries v. Abrams</u>, 309 Pa. Super. 202, 206 (1982) (citing <u>Morphy v. Shipley</u>, 351 Pa. 425 (1945); <u>see</u> <u>also</u> <u>Casa DiSardi, Inc.</u> <u>v. Alpha Motors, Inc.</u>, 227 Pa. Super. 415 (1974).  Stated differently, abuse of process occurs when the original, lawful action is somehow perverted to accomplish an unrelated, unlawful result.  Generally, abuse of process claims manifest as some form of extortion, such as using the legal process to put pressure upon a party to compel him to pay a different debt, or to take or refrain from taking some action wholly unrelated to the process.  <u>Rosen v. American Bank of Rolla</u>, <u>627 A.2d 190, 192</u> (Pa. Super. 1993).

Plaintiff maintains that "unilaterally and thus unlawfully increasing the judgment amount without judicial notice and without review was. . . a perversion of the foreclosure process." (Doc. 11, Paragraph 28).

First, for the reasons set forth in Sections A through C above, there was nothing unlawful about the way Moving Defendants went about foreclosing and executing on the judgment.  Second, Plaintiff is unable to identify a process that was abused. Taken on its face, even if Moving Defendants failed to accept Plaintiff's $130,000.00 third party purchase of the property in satisfaction of the judgment, said action involved no legal process.  While it certainly occurred within the context of Moving Defendant's foreclosure and execution action, Plaintiff cannot challenge the validity of that action as the same is barred by the Rooker-Feldman Doctrine.  As such, Count III of Plaintiff's Complaint for abuse of process must be dismissed with prejudice.

### E.   PLAINTIFF'S UNFAIR TRADE PRACTICES CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED.

The Consumer Protection Law prohibits "unfair methods of competition and unfair or deceptive acts or practices" in the conduct of trade or commerce.  73 Pa. C.S. §201-3.  Section 201-2(4) lists specific unfair methods of competition and unfair or deceptive acts or practices, and includes a catchall provision.  The statute creates a private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who, as a result, sustain an ascertainable loss.

Hunt v. United States Tobacco Co., 538 F.3d 217, 221 (3d Cir., 2008) (quoting

Tow v. Metro. Life Ins. Co., 593 Pa. 20, 928 A.2d 186 (Pa. 2007).

28

> To bring a private cause of action under the UTPCPL, Plaintiff must show that he justifiably relied on the Defendant's wrongful conduct or representation that he suffered a harm as a result of that reliance.

Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 501, 854 A.2d 425, 438 (Pa. 2004) (citations omitted).

In the face of Plaintiff's First Amended Complaint, it is entirely unclear as to which of the 21 unfair methods of competition or unfair deceptive acts or practices Plaintiff alleges Moving Defendants engaged.  See 73 P.S. §201-2(4).  However, after reviewing all 21 provisions, it appears that the only potentially applicable claim would be the twenty-first, "Engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" also known as the Consumer Protection Law "Catchall" Provision.

The Third Circuit has held that "the Pennsylvania Supreme Court would require a justifiable reliance where a private plaintiff alleges deceptive conduct under the post-1996 Catchall Provision."  Hunt, 538 F.3d at 222.

Plaintiff has failed to plead any justifiable reliance to support his claim.  As such, Count IV of Plaintiff's Complaint for unfair trade practices must be dismissed with prejudice.

## VI.    CONCLUSION:

For the foregoing reasons, Moving Defendants Northumberland National Bank and J. Todd Troxell respectfully request that this Court grant their Motion to Dismiss and dismiss Plaintiff's First Amended Complaint in its entirety together with such other relief as the Court deems just and appropriate.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

*Donald L. Carmelite*

Donald L. Carmelite, Esquire
I.D. No. 84730
4200 Crums Mill Road, Suite B
Harrisburg, PA 17112
(717) 651-3504

05/1138988.v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2013, a true and correct

copy of the foregoing Brief was served via electronic mail, on the following

counsel of record:

Matthew B. Weisberg, Esquire
Weisberg Law, PC
7 South Morton Avenue
Morton, PA  19070

**MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN**

*Donald L. Carmelite*

Donald L. Carmelite, Esquire
I.D. No. 84730
4200 Crums Mill Road, Suite B
Harrisburg, PA 17112
(717) 651-3504